UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN W. BARKER, II,

       Petitioner,

v.                    Case No: 2:13-cv-497-FtM-29DNF

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

       Respondents.[1]

_____

## OPINION AND ORDER

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by John W. Barker II ("Petitioner") who is presently confined at the Okaloosa Correctional Institution in Crestview, Florida (Doc. 1, filed July 5, 2013).  Petitioner, proceeding *pro se*, attacks the convictions and sentences entered by the Twentieth Judicial Circuit Court in Lee County, Florida for second degree murder and home invasion robbery.  Id.  Respondent filed a response to the petition (Doc. 13).  Petitioner filed a reply (Doc. 22).

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."  Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004)(citations omitted).  In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

Petitioner raises four claims in his petition. Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be dismissed or denied. Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

I.    **Background and Procedural History**

On October 30, 2003, Petitioner was charged by information with second degree murder, in violation of Florida Statute § 782.04(2), and with home invasion robbery, in violation of Florida Statute §§ 812.135 and 812.13 (Ex. 1, Vol. 1 at 8).[2] After a jury trial, Petitioner was found guilty as charged on both counts (Ex. 1, Vol. 4 at 104). He was sentenced to consecutive prison sentences of thirty years on count one and life on count two (Ex. 1, Vol. 5 at 131). On August 24, 2007, Florida's Second District Court of Appeal affirmed Petitioner's convictions and sentences (Ex. 8); Barker v. State, 969 So. 2d 377 (Fla. 2d DCA 2007).

---

[2] References to exhibits are to those filed by Respondent on November 14, 2013 (Doc. 15). References to the trial transcript, located in Volume VII of Exhibit 2 will be cited as (T. at ___).

On May 21, 2008, Petitioner filed a motion in which he alleged that his appellate counsel had been ineffective (Ex. 13). Florida's Second District Court of Appeal treated the motion as a state habeas petition and denied the petition (Ex. 14); Barker v. State, 987 So. 2d 84 (Fla. 2d DCA 2008).

On March 23, 2009, Petitioner filed a motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion").  Evidentiary hearings were held on the Rule 3.850 motion on September 30, 2010 and October 7, 2010 (Ex. 20).  After the hearings, the post-conviction court denied Petitioner's Rule 3.850 motion (Ex. 20 at 652-56). On April 17, 2013, Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 23); Barker v. State, 111 So. 3d 887 (Fla. 2d DCA 2013).

## II.   Governing Legal Principles

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  White v. Woodall, 134 S. Ct. 1697, 1702 (2014).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S.

Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting Wood v. Allen, 558 U.S. 290, 293 (2010)).

**B. Standard for Ineffective Assistance of Counsel**

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id. This is a "doubly deferential" standard of review that gives both the state

court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Id. At 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### C.   Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)).  The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of

the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. Coleman, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179-80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999); Murray v. Carrier, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction

of one who is actually innocent[.]" <u>Murray v. Carrier</u>, 477 U.S. 478, 479-80 (1986).  Actual innocence means factual innocence, not legal insufficiency.  <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995).  "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324).

## III. **Analysis**

### A. **Claim 1A**

Petitioner asserts that the evidence at trial did not support a conclusion that the crimes for which he was convicted occurred on the dates alleged in the charging information (Doc. 1 at 9). Specifically, Petitioner notes that the information alleged that the offenses occurred between October 1, 2003 (when the victim was discovered) and October 10, 2003 (when the victim died), but that the evidence at trial indicated that the victim was actually beaten and robbed on September 30, 2003. <u>Id.</u>  Petitioner asserts that there was no confusion about the dates on which the victim was beaten and that the state "in fact, argued extensively that the crimes occurred on September 30, 2003 and never argued that the crimes occurred on the dates alleged in the information, [and

therefore] it is patently impossible to make a harmless error finding. Thus, prejudice must be assumed." <u>Id.</u> at 11. Respondent asserts that this claim is unexhausted because Petitioner failed to raise the constitutional dimension thereof at trial and on direct appeal (Doc. 13 at 14).

Upon review of the pleadings and the record, the Court concludes that Petitioner's failure to exhaust the constitutional dimension of this claim in the state courts precludes federal habeas corpus review. In his brief on direct appeal, Petitioner argued, in terms of state law only, that the prosecution's failure to amend the information to conform to the evidence presented at trial required reversal of the judgment and sentence (Ex. 2 at 6-17). Petitioner's state law argument presented on direct appeal leaves § 2254(b)(1)'s exhaustion requirement unsatisfied. <u>Duncan</u>, 513 U.S. at 365-66. For a habeas petitioner to fairly present a federal claim to state courts:

> It is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court "such that a reasonable reader

would understand each claim's particular legal
basis and specific factual foundation.

While these broad principles are relatively
clear, the district court correctly noted that
many courts have struggled to pinpoint the
minimum requirements that a habeas petitioner
must meet in order to exhaust his remedies.
For instance, the Supreme Court recently wrote
that a petitioner wishing to raise a federal
issue in state court can do so "by citing in
conjunction with the claim the federal source
of law on which he relies or a case deciding
such a claim on federal grounds, or by simply
labeling the claim 'federal.' " Baldwin v.
Reese, 541 U.S. 27, 32, 124 S. Ct. 1347, 1351,
158 L. Ed. 2d 64 (2004). If read in a vacuum,
this *dicta* might be thought to create a low
floor indeed for petitioners seeking to
establish exhaustion. However, we agree with
the district court that this language must be
"applied with common sense and in light of the
purpose underlying the exhaustion requirement
[:] to afford the state courts a meaningful
opportunity to consider allegations of legal
error without interference from the federal
judiciary." This is consistent with settled
law established by the Supreme Court. We
therefore hold that "'[t]he exhaustion
doctrine requires a habeas applicant to do
more than scatter some makeshift needles in
the haystack of the state court record.'"

McNair v. Campbell, 416 F.3d 1291, 1302-03 (11th Cir. 2005)

(emphasis added) (internal citations omitted).  Simply put, "[t]he

exhaustion doctrine requires the petitioner to 'fairly present'

his federal claims to the state courts in a manner to alert them

that the ruling under review violated a federal constitutional

right." Pearson v. Sec'y, Dept. of Corr., 273 F. App'x 847, 849-

50 (11th Cir. 2008) (citation omitted).  As part of such a showing,

the claim presented to the state courts "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." <u>Reedman v. Thomas</u>, 305 F. App'x 544, 545–46 (11th Cir. 2008) (internal citation omitted).   In the case at hand, Petitioner made no reference to his federal constitutional rights, and as a result, he did not properly exhaust this claim. <u>See</u> <u>Pearson</u>, 273 F. App'x at 847 (claim unexhausted when petitioner cited exclusively to state cases, all of his substantive arguments addressed state law, and nothing in the argument alerted the state court to a federal due process claim).

In his reply, Petitioner concedes that "the issues presented in his [federal] habeas petition differ from the grounds exhausted in the state courts[,]" but claims that "such failure is not his fault."   Petitioner asserts that his appellate counsel was ineffective for failing to "enunciate the due process claim" that he (Petitioner) must be "found guilty of all essential elements of the offense beyond a reasonable doubt[.]"   Petitioner argues that this Court has the discretion to consider this claim under <u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1315 (2012) and <u>Trevino v. Thaler</u>, 133 S. Ct. 1911 (2013).

Petitioner's reliance on <u>Martinez</u> and <u>Trevino</u> is misplaced. In <u>Martinez</u>, the Supreme Court recognized a narrow exception to <u>Coleman</u>'s exhaustion requirement regarding claims of ineffective

assistance of trial counsel.  It held that, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Martinez, 132 S. Ct. at 1320.[3]  The Martinez Court was careful to limit the scope of its ruling. "It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial review collateral proceeding may be deficient for other reasons." Id. at 1320; Banks v. Workman, 692 F.3d 1133, 1148 (10th Cir. 2012)(Martinez applies "only to a prisoner's procedural default of a claim of ineffective assistance at trial, not to claims of deficient performance by appellate counsel") (quotation marks and citation omitted); Gore v. Crews, 720 F.3d 811, 816 (11th Cir. 2013) ("By its own emphatic terms, the Supreme Court's decision in Martinez is limited to claims of ineffective assistance of trial counsel that are otherwise procedurally barred due to the

---

[3] In Trevino, the Court extended the rationale of Martinez to cases where, as a matter of systemic operation, the first opportunity to challenge trial counsel's effectiveness is in state post-conviction proceedings. See Trevino, 133 S. Ct. at 1918, 1921.

ineffective assistance of post-conviction counsel."). Given that Claim 1(A) is not a claim of ineffective assistance of trial counsel, <u>Martinez</u>' narrow holding will not excuse Petitioner's procedural default of this claim.

Likewise, although ineffective assistance of appellate counsel *can* operate to provide cause for the procedural default of a claim of trial court error, Petitioner must have first exhausted the underlying ineffective assistance of appellate counsel claim, which he did not do. <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 450-51 (2000) (concluding that a federal habeas court is barred from considering a procedurally defaulted ineffective assistance of counsel claim as cause for procedural default of another claim); <u>Hill v. Jones</u>, 81 F.3d 1015, 1029-31 (11th Cir. 1996) (noting that the Supreme Court's jurisprudence on procedural default dictate that procedurally defaulted claims of ineffective assistance cannot serve as cause to excuse a default of a second claim). Nor has Petitioner presented new, reliable evidence to support an actual innocence claim. <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995). Consequently, the ineffective assistance of appellate counsel claim, raised for the first time in Petitioner's reply (Doc. 22), does not satisfy the cause and prejudice, or fundamental miscarriage of justice exception to overcome the procedural default of Claim 1A. Florida's procedural rules and time limitations preclude a second direct appeal. Fla. R. App. P.

9.140(b)(3) (defendant wishing to appeal a final judgment must do so within "30 days following rendition of a written order"). Consequently, Claim 1A is both unexhausted and procedurally barred and cannot be considered by this Court.

Finally, even if Claim 1A was exhausted, Petitioner is not entitled to federal habeas corpus relief. See 28 U.S.C. § 2254 (b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State). Petitioner has not identified any clearly established federal law indicating that a defendant's constitutional rights are violated by a small discrepancy or error in a defendant's charging instrument that otherwise adequately apprises the defendant of the charges against him.  To the contrary, the limited case law that has addressed the subject suggests that a variance between the date alleged and the date proved will not trigger reversal as long as the date proved falls within the statute of limitations and before the return of the indictment. United States v. Harrell, 737 F.2d 971, 981 (11th Cir. 1984); United States v. Harris, 344 F.3d 803, 805 (8th Cir. 2003) ("A variance between the date set forth in the indictment and the proof at trial is not fatal as long as the acts alleged were committed within the statute of limitations and before the date of indictment."); United States v. Nunez, 668 F.2d 1116 (10th Cir. 1981) (as long as the proof relating to the

time of possession fell within the statute of limitations periods, any variance between the date alleged in the indictment and the proof at trial could be disregarded).

Petitioner does not suggest that he was confused or misled by the dates in the information or that he was otherwise prejudiced in the preparation of his defense.[4]   Thus, the state appellate court's denial of this claim was not an unreasonable application of what the Supreme Court has said on the matter.  See Russell v. United States, 369 U.S. 749, 763-64 (1962) (recognizing that the sufficiency of an indictment is measured by whether "the indictment contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet[.]")(internal quotations omitted).   In addition to being unexhausted, Claim 1A is denied on the merits.

_____

[4] Nor could Petitioner make this claim.  That Petitioner was aware the state alleged the victim was beaten on the evening of September 30, 2003 is clear from defense counsel's opening statement in which he stated:

> Now, absolutely nobody will come in here and tell you that what happened on September 30th, 2003, was anything but a tragedy.  The issue is not going to be whether this tragedy happened.  The sole issue in this case is whether or not the State has charged the correct person with the crime.

(T. at 19-20).

**B.   Claim 1B**

Petitioner asserts that the trial court erred when prejudicial testimony was introduced at trial (Doc. 1 at 13). Specifically, he states that two witnesses testified that "Petitioner is always talking about robbing someone," and that the trial court "reversibly erred in overruling the objection and denying the request for a curative instruction." Id.  Respondent argues that this claim is not exhausted because Petitioner raised this issue on direct appeal only as a matter of state law (Doc. 13 at 22).

Again, Petitioner concedes that he did not raise the constitutional dimension of this claim in state court and urges that blame for his failure to exhaust lies with his appellate attorney (Doc. 22 at 1). As discussed in Claim 1A, supra, ineffective assistance of appellate counsel cannot excuse a habeas petitioner's failure to exhaust his claim in state court unless the petitioner has exhausted the underlying ineffective assistance claim. See discussion supra Claim 1A (Part III(A)).  Petitioner has made none of the requisite showings to excuse his default, and the default bars federal habeas review of Claim 1B. See Duncan v. Henry, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guarantee by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

To the extent Petitioner asserts that the trial court erred under Florida law by admitting evidence of Petitioner's other "self-reported" instances of robbery, the claim is not cognizable on federal habeas review. "As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence[,]" Alderman v. Zant, 22 F.3d 1541, 1555 (11th Cir. 1994), because the state court "has wide discretion in determining whether to admit evidence at trial[.]" Lynd v. Terry, 470 F.3d 1308, 1314 (11th Cir. 2006); see also Baxter v. Thomas, 45 F.3d 1501, 1509 (11th Cir. 1995) (federal habeas corpus is not the proper vehicle to correct evidentiary rulings); Boykins v. Wainwright, 737 F.2d 1539, 1543 (11th Cir. 1984) (federal courts are not empowered to correct erroneous evidentiary rulings in state court except where rulings deny petitioner fundamental constitutional protections). Therefore, it is not for this Court on federal review to decide whether the state trial court erred by admitting the evidence under Florida law; rather, this Court may only consider whether the state trial court unreasonably applied clearly established federal law, "as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d).

Even assuming *arguendo* that this claim has been exhausted and raises a federal due process claim, Petitioner is not entitled to habeas relief because he has failed to identify a Supreme Court

case holding that the admission of similar fact or collateral crime evidence in similar circumstances was unconstitutional. In Estelle v. McGuire, 502 U.S. 62, 75 n. 5 (1991), the Supreme Court expressly refused to determine whether the introduction of prior-crimes evidence to show propensity to commit a crime would violate the Due Process Clause. Id. ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."). Because the Supreme Court has specifically declined to address whether the introduction of propensity evidence violates due process, Petitioner cannot show that the court of appeal's decision was contrary to or an unreasonable application of clearly established federal law. Id. Accordingly, Petitioner is not entitled to relief on this claim.[5]

In addition to being dismissed as unexhausted and procedurally barred, Claim 1B is denied pursuant to 28 U.S.C. § 2254(d).

---

[5] The Supreme Court has addressed whether prior acts evidence is permissible under the Federal Rules of Evidence, see Old Chief v. United States, 519 U.S. 172 (1997), Huddleston v. United States, 485 U.S. 681 (1988). However, the Court has not explicitly addressed admission of such evidence in constitutional terms.

C.   **Claim 2**[6]

Petitioner asserts that trial counsel was ineffective for failing to call John W. Barker III ("Barker III") and Lloyd Walton ("Walton") to testify at trial (Doc. 1 at 17).   Petitioner asserts that Barker III would have testified that Petitioner did not participate in the robbery and murder of the victim and that Walton would have testified that Petitioner was not in a vehicle he observed leaving the scene of the crime.

Petitioner raised this claim in his Rule 3.850 motion, and after an evidentiary hearing, the post-conviction court concluded that Petitioner failed to meet his burden under Strickland (Ex. 20 at 655).   The post-conviction court's denial of this claim was *per curiam* affirmed by Florida's Second District Court of Appeal (Ex. 23).   A review of the record supports the state courts' conclusions.

---

[6] In his petition, Petitioner divided Claim 2 into two parts. In the first part, Petitioner alleges that counsel was ineffective for failing to call John Barker III and Lloyd Walton as defense witnesses.  In the second part, Petitioner alleges that the post-conviction court erred by failing to provide a written opinion as to why it denied his claim that counsel was ineffective for failing to call Eric Padilla as a witness (Doc. 17-21).  However, in his reply, Petitioner asserts that "Eric Padilla could not have provided more of a benefit to [Petitioner] than he already did. Counsel's calling of Padilla would have presented the State with the opportunity to impeach Padilla with a prior inconsistent statement which otherwise did not come in.  Counsel's decision was strategic and appropriate." (Doc. 22 at 2).  Given Petitioner's concession that counsel did not err by failing to call Padilla as a witness, this Court will not further address Petitioner's assertion that counsel was ineffective for failing to do so.

### 1. Witness John Barker III

At the evidentiary hearing on Petitioner's Rule 3.850 motion, Petitioner's brother, John Barker III, who was also charged with (and convicted for) this crime, testified that had he been asked to do so, he "probably" would have testified that Petitioner was not at the scene of the crime on the night of the murder even though his defense at his own trial was that Petitioner was the true perpetrator of the murder and home invasion (Ex. 20 at 527-28). In contrast, Barker III's defense counsel, Robert Hill ("Hill") testified that he would not have allowed Barker III to testify at Petitioner's trial because his theory of defense was that Petitioner was the actual instigator of the crime and that Barker III was unaware that Petitioner intended to go inside of the victim's home. Id. at 593, 594. Hill testified that Barker III approved of this defense Id. at 599. Hill stated that, had Barker III insisted upon testifying at Petitioner's trial, he would have instructed him to invoke his Fifth Amendment right to remain silent and moved to withdraw as his attorney. Id. at 595.

Defense counsel testified at the Rule 3.850 hearing that he believed that any testimony from Barker III on this issue would have been perjury which he could not have knowingly offered at trial (Ex. 20 at 537, 570). Specifically, counsel was in possession of letters Petitioner had written to his first defense attorney in which he had admitted to being inside the house on the

night of the crime. Id. at 536-37.[7]  In addition, a portion of a
taped conversation between Petitioner and a friend while
Petitioner was in jail was played at the evidentiary hearing. Id.
at 680-86.  In that conversation, Petitioner stated he "got me a
good old lie planned" and indicated to his friend that he had been
at the scene of the crime while Barker III murdered the victim:

> When the dude's already fucked up, tied up,
> and unconscious, [Barker III] wants to try to
> do something to the dude while he's
> unconscious.  Dumbass motherfucker.  I cussed
> him out.  That dude would have lived, man, if
> his dumbass wouldn't have done that shit.  You
> know what I'm saying?  Now I gotta go – I
> gotta do a life sentence for a murder for his
> stupidity.  You know what I'm saying?

Id. at 683.  Counsel believed that Petitioner's letter to his
first counsel and taped interviews from the jail "were an
indication that we could not put somebody on the stand to say that
[Petitioner] wasn't there." Id. at 582.

     Counsel also testified that he did not want to risk losing
the advantage of opening and closing argument by presenting defense
witnesses who were of only marginal value (Ex. 20 at 569-570).[8]

---

[7] Counsel testified that the original theory of defense was
going to be that the robbers found the victim tied up and beaten
when they entered the home. The robbers then "flipped out" and
left.

[8] At the time of Petitioner's trial, Florida law created a
procedural advantage for defendants who limited the presentation
of evidence to only their own testimony. See In re Amend. to Fla.
Rules of Crim. P., 957 So. 2d 1164, 1167 (Fla. 2007).  If, and

When Petitioner's post-conviction counsel asked counsel why he had
not put on a stronger defense by offering the testimony of defense
witnesses, given that "multiple jabs" could "deliver a knockout
punch", counsel stated:

> It's fine. Enough.  If you're talking about
> two jabs, it was not worth giving up that
> closing.  In fact, the jury had stayed out a
> reasonably long amount of time.  I remember
> that Ms. Biffle, who was the Assistant State
> Attorney at the time, was not sure how this
> was going to go, and I talked to Mr. Barker
> very briefly.  I said do you want me to offer
> up ten years at this point, because we don't
> know what's going on back there.
>
> We approached Ms. Biffle with that, and she
> went and talked with the powers that be and
> said, no, we're going to ride this thing out.
> I don't believe that we had enough jabs.
>
> Those were not going to turn giving up that
> closing is what kept in close, because we were
> able to hammer, I mean absolutely hammer every
> one of the State's witnesses that we would not
> have been able to do had we given up that
> closing.

Id. at 584-85.[9]

_____

only if, the defense limited its case in that way, it was permitted
to give both the first and last closing argument. Id.

    [9] Counsel was also concerned that if Petitioner attempted to
present an alibi defense, tapes from the jail in which he had
talked about the victim being "tied up" and in which he told
counsel that he had a "big lie" planned would have come into
evidence (Ex. 20 at 555-56, 575).  Petitioner asserts that this
belief was unreasonable because under Florida law, the tapes would
not have been admissible for any purposes (Doc. 1 at 19).  Because
the Court concludes that counsel had adequate reasons for not
presenting defense witnesses at trial, and because this Court's
inquiry is an objective one, the Court will not address

Given the testimony from Barker III's counsel that he would not have allowed him to testify at Petitioner's trial and the uncertainty of Barker III's "probably" answer at the evidentiary hearing, there is only speculation and after-the-fact evidence that Barker III would have been available to testify and would have testified favorably at Petitioner's trial. Conclusory or speculative claims cannot support an ineffective assistance of counsel claim. Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991).

Furthermore, counsel's desire to forgo presenting defense witnesses in order to gain the advantage of last closing argument was a strategic decision.  Strategic choices are evaluated for their reasonableness. Chandler v. United States, 218 F.3d 1305, 1314 n. 4 (11th Cir. 2000).  The Florida Supreme Court has repeatedly held that it is reasonable for defense counsel to consider the effect of giving the last closing argument when formulating trial strategy. See Evans v. State, 995 So. 2d 933, 945 n.16 (Fla. 2008) (counsel's strategic decision to take into consideration the opportunity to have opening and closing argument

---

Petitioner's assertions that the jail tapes could not have been offered into evidence at trial. See Castillo v. Sec'y, Fla. Dep't of Corr.,722 F.3d 1281, 1285 n. 2 (11th Cir. 2013)("The relevant question under Strickland's performance prong, which calls for an objective inquiry, is whether any reasonable lawyer could have elected not to object for strategic or tactical reasons, even if the actual defense counsel was not subjectively motivated by those reasons.").

was reasonable); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1100 (11th Cir. 2007) (recognizing counsel's ability to retain the right of presenting both opening and closing arguments to the jury as a "distinct advantage").

Finally, trial counsel is not obligated to present testimony that he reasonably believes to be perjury.  In Nix v. Whiteside, 475 U.S. 157 (1986), the United States Supreme Court stated that "[a]lthough counsel must take all reasonable lawful means to attain the objectives of the client, counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law." Id. at 166; see also Williams v. Taylor, 529 U.S. 362 (2000) (recognizing that even if false testimony might have persuaded a jury to acquit a defendant, "it is not fundamentally unfair to conclude that he was not prejudice by counsel's interference with his intended perjury."). Because Petitioner had no right to present false evidence at trial, counsel was not ineffective for failing to help him do so.  Putman v. Head, 268 F.3d 1223, 1246 (11th Cir. 2001) ("Although an attorney has an ethical duty to advance the interest of her client, that duty is limited by an equally solemn duty to comply with the law and standards of professional conduct.") (internal quotation marks, alteration, and citation omitted); Davis v. Singletary, 119 F.3d 1471, 1475 (11th Cir. 1997) ("The duty to render effective assistance of counsel does not include the duty to present false

or misleading testimony."); <u>Van Poyck v. Fla. Dep't of Corr.</u>, 290 F.3d 1318, 1323 (11th Cir. 2002) ("[A] lawyer need not embrace his client's fraud.").

Petitioner argues that counsel had no irrefutable proof that he was actually at the crime scene or that Barker III would have lied on the stand because he (Petitioner) could have learned of what transpired during the robbery and beating of the victim by merely speaking with Barker III (Doc. 22 at 4).[10] Petitioner misunderstands the standard of review in a 28 U.S.C. § 2254 habeas petition. Under the AEDPA's "double deferential" standard of review, both counsel and the state court have the benefit of the doubt. <u>See</u> <u>Burt v. Titlow</u>, 134 S. Ct. 10, 13 (2013). Accordingly, in order to demonstrate entitlement to federal habeas relief, Petitioner would need to show that <u>no</u> reasonable counsel could have interpreted the letter and jail recording as proof that Barker III would have offered perjured testimony at trial, <u>and</u> that the post-conviction court's conclusion on this issue was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." <u>Id.</u> at 16 (quoting <u>Harrington</u>, 131 S. Ct. at 786-87).

---

[10] Notably, Petitioner does not assert that he actually gained this knowledge through mere conversation with his brother – rather, he argues that counsel *could* have come to this conclusion and that his failure to do so constituted deficient performance.

Given Petitioner's letter to his prior counsel in which he asserted that the victim was already bound and gagged when he entered his home and his statements in the jailhouse recording suggesting that Petitioner was in the house when Barker III beat the victim, competent counsel could have concluded that Petitioner was at the crime scene and that Baker III's testimony otherwise would have been perjury.  See Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983) (tactical decision are not subject to collateral attack unless the decision was so "patently unreasonable that no competent attorney would have chosen it.").

The state court's conclusion that "[b]ased upon the testimony and evidence at the hearing . . . counsel acted reasonably under the prevailing professional norms" was neither contrary to Strickland nor based upon an unreasonable determination of the facts.  Petitioner has failed to demonstrate that counsel's failure to call Barker III as a defense witness entitles him to federal habeas corpus relief.

## 2.  Witness Lloyd Walton

At the Rule 3.850 evidentiary hearing, Petitioner also presented the testimony of Lloyd Walton ("Walton") who testified that on the night of the crimes, he saw two males, about twenty-five years old, driving slowly through the neighborhood in which the crime was committed (Ex. 20 at 608-12).  Walton identified

Barker III as the passenger in that car. Id. at 603. He could not identify the driver. Id. at 605.

Counsel testified at the hearing that he discussed with Petitioner the possibility of calling Walton as a defense witness, but they decided that if the State did not call him, it was not worth giving up opening and closing argument (Ex. 20 at 618). Specifically, counsel noted that the state could have put the possibility in the jury's mind that Petitioner was in the back seat of the vehicle and "he [Walton] saw two people, it doesn't mean that there weren't three people in the vehicle, or at the time that he had seen them." Id. at 619. Counsel stated:

> We did discuss once again going back to opening and closing of the closing argument. If the State was looking to call Mr. Walton, cross-examination we would be able to bring out the fact that he didn't identify three people in the car. We knew from the testimony Danny Hildebrand was going to be the driver. We could tell from the guy wearing the red hat was going to be identified as Barker, the III.
>
> The problem that we were going to have is if we put Mr. Walton on the stand, the State was going to in cross examination be able to poke a hole if they so choose,  If they were on the ball by asking specific questions as to whet he might not have seen.
>
>                    . . .
>
> In cross-examination the State could have simply asked questions of did you see the truck before it had turned the corner? Were you able to see under the windows whether somebody was crouching in the vehicle?  That could have put a seed in the jury's mind, well, he saw two people, it doesn't mean that there

> weren't three people in the vehicle, or at the
> time that he had seen them.
>
> Right there, just by getting those questions
> out I have lost the sandwich and the State has
> planted a seed against what would have been
> our witness.

Id. at 616, 618-19.

As discussed in Part III(b)(1) supra, it was reasonable for counsel to consider the effect of losing opening and closing argument if Walton was presented as a witness. Walton's observation of two people in a car on the night of the crime did not preclude the possibility that there were more than two people in the car, and competent defense counsel could conclude that any marginal benefit gained by Walton's testimony would have been offset by losing closing argument. Petitioner has failed to demonstrate that counsel's failure to call Walton as a defense witness entitles him to federal habeas corpus relief.

The state courts' adjudication of Claim 2 was neither contrary to Strickland nor based upon an unreasonable determination of the facts. Claim 2 is denied pursuant to 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.  **Certificate of Appealability**[11]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

---

[11] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id. As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

1.   The Florida Attorney General is dismissed from this action.

2.   Claims 1A and 1B of the 28 U.S.C. § 2254 petition for habeas corpus relief filed by John Barker, III (Doc. 1) are **DISMISSED**, alternatively, Claims 1A and 1B are **DENIED.** All remaining claims are **DENIED.**

3.   Petitioner is **DENIED** a certificate of appealability.

4.   The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this   24th   day of June, 2015.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: John Barker II
Counsel of Record

– 32 –